IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH GOROSPE, | ) | CASE NO. 5:10CV0839 |
| | ) | |
| Petitioner, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| KEITH SMITH, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the motion of respondent to dismiss the petition of Joseph Gorospe ("Gorospe") for a writ of habeas corpus on the grounds that Gorospe filed the petition untimely.  Doc. No. 5.  Gorospe opposes this motion.  Doc. No. 8.  Gorospee is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Gorospee*, Case No. CR 06 11 3978 (Summit County 2007).  For the reasons set forth below, the magistrate judge recommends that respondent's motion be GRANTED and Gorospe's petition be dismissed.

I

Gorospe pleaded guilty to murder, kidnaping, tampering with evidence, and domestic violence.  The trial court sentenced Gorospe on April 17, 2007.  He did not file a direct appeal. Gorospe alleges the following facts and supports them with affidavits attached to his opposition brief:

On August 11, 2007, Gorospe, through his mother, Andrea Gorospe, hired attorney James D. Owen to investigate a potential state post-conviction petition action based on ineffective assistance of counsel. (Exhibit 1, pp. 1-2). Mrs. Gorospe had concerns about whether her son had received proper counsel regarding his plea due to her concerns regarding his mental health from the time of his wife's death through his plea. (Exhibit 1, p.1). She indicated that she had told Gorospe's trial counsel, Henry Hilow, about her concerns regarding her son's mental health, but that Mr. Hilow, to her knowledge, never addressed those concerns. (Exhibit 1, p.1). Mrs. Gorospe told Mr. Owen that she had contacted several attorneys since the time of her son's plea, but that none of the attorneys she had previously spoken to had been willing to look into the matter. (Exhibit 1, p.2).

On August 13, 2007, Mr. Owen retained a board certified clinical psychiatrist, Martin T. Ryan, M.D., for the purpose of evaluating Gorospe, and to determine whether he could render an opinion about whether Gorospe suffered from any mental illness or disorder on October 23, 2007, the date of his wife's death. (Exhibit 1, p.2). A copy of the November 8, 2010 Affidavit of Martin T. Ryan, M.D. is attached hereto as Exhibit 2.

Dr. Ryan told Mr. Owen that he would need to review all of the statements made by Gorospe to law enforcement or others regarding his wife's death, that those statements were critical to any opinion that he may have, and that he would not issue an opinion without first reviewing them. (Exhibit 2, p.1).

On August 15, 2007, Mr. Owen requested Gorospe's file from his trial counsel, Mr. Hilow. (Exhibit 1, p.2). On August 23, Mr. Owen again met with Dr. Ryan and was again informed that Dr. Ryan would need the records of any statements made by Gorospe regarding his wife's death. (Exhibit 1, pp 2-3). Throughout September of 2007, Mr. Owen made numerous attempts to receive Gorospe's complete file, including any records of statements made by Gorospe regarding his wife's death. (Exhibit 1, p.3). On September 21, 2007, Mr. Owen travelled from Columbus to Cleveland to pick up Gorospe's file from Mr. Hilow; however, the documents provided by Mr. Hilow's office on that date did not include any of the discovery available to Gorospe under the Ohio Rules of Criminal Procedure. (Exhibit 1, p.3).

On September 28, 2007, October 3, 2007, October 5, 2007, October 9, 2007, October 12, 2007, October 15, 2007, October 16, 2007, and October 17, 2007, Mr. Owen attempted to obtain the complete file, including the discovery, from Mr. Hilow's office. (Exhibit 1, pp.3-4). On October 19, 2007, Mr. Owen received a faxed letter from Mr. Hilow that indicated he did not have a copy of the discovery, and that it was retained by the prosecuting attorney. (Exhibit 1, p.4). That same day, Mr. Owen requested the discovery from the Summit County Prosecutor's Office, and made additional requests for the discovery on October 31, 2007, November 1, 2007, and November 2, 2007. (Exhibit 1, pp.4-5).

On November 5, 2007, Mr. Owen was informed that the prosecutor's office would not provide him with Gorospe's discovery, but that it would be provided to Mr. Hilow. (Exhibit 1, p.5).  On November 6, 2007, Mr. Owen was informed that Mr. Hilow was in receipt of the discovery and that he would be mailing it that day. (Exhibit 1, p.5). That same day, Mr. Owen met with Dr. Ryan and advised him that he should be in receipt of the discovery by Friday, November 9, 2007.  (Exhibit 1, p. 5; Exhibit 2, p.1).

Dr. Ryan prepared a proposed affidavit that he was considering issuing, and brought that affidavit with him on the morning of Friday, November 9, 2007, to Mr. Owen's office to review the discovery.  (Exhibit 2, pp.1-2; Exhibit 1, p. 5).  However, the discovery had not been received by Mr. Owen by that morning. (Exhibit 1, p.5; Exhibit 2, p.1-2).  While at Mr. Owen's office, Dr. Ryan had Mr. Owen's receptionist notorize [sic] his proposed affidavit, but refused to issue it or provide Mr. Owen with a copy until after he reviewed Gorospe's statements. (Exhibit 2, p. 2; Exhibit 1, p.5). Mr. Owen and Dr. Ryan agreed to meet on Monday, November 12, 2007, with the hopes that the discovery would be available for Dr. Ryan's review by that time. (Exhibit 1, p.5; Exhibit 2, p.2).

On Friday afternoon, November 9, 2007, Mr. Owen received the discovery materials from Mr. Hilow, with a letter dated November 7, 2007. (Exhibit 1, p.5).  However, Dr. Ryan was unable to meet with Mr. Owen, either later that day, or on Saturday or Sunday. (Exhibit 1, p. 5).

On the morning of November 12, 2007, Mr. Owen and Dr. Ryan met to review the discovery materials, including Gorospe's statements.  (Exhibit 1, p.5; Exhibit 2, p.2). After reviewing those statements, Dr. Ryan issued his psychiatric opinion and provided Mr. Owen with a copy of his previously executed affidavit. (Exhibit 2, p.2). That same day, November 12, 2007, Mr. Owen provided a copy of Dr. Ryan's affidavit to attorney Keith Yeazel, who was hired to provide an expert legal opinion regarding whether Gorospe was denied his right to the effective assistance of counsel. (Exhibit 1, pp.5-6).  Later that day, Mr. Yeazel provided Mr. Owen with a copy of his legal opinion and affidavit that declared that Mr. Hilow had breached a duty to Gorospe and that Gorospe suffered actual prejudice as a result. (Exhibit 1, p.6).

It was only on November 12, 2007, that Gorospe could have and did in fact discover, through the exercise of due diligence, that he did in fact suffer from a mental illness or disorder, namely Major Depressive Disorder, Recurrent, with accompanying derealization; that this mental health condition made him more susceptible to sudden passions or fits of rage; and that this coupled with the evidence of acts of serious provocation by his wife, provided him with a reasonable defense to the aggravated murder and murder charges.  These facts form the predicate for his claim that his trial counsel, Henry Hilow, owed him a duty to investigate his mental health condition at the time of the offense by engaging a

3

>   mental health professional, that trial counsel was deficient in his performance by failing to so investigate and engage a mental health professional, and that trial counsel's deficient performance resulted in prejudice to Gorospe.

Opposition brief at 5-8. Respondent does not dispute the facts recited by Gorospe but does dispute the conclusions.

On November 13, 2007, Gorospe filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.2, asserting ineffective assistance of trial counsel for failing to engage a mental health expert to examine Gorospe. Gorospe argued that he suffers from a recurrent major depressive disorder, and, had this been known, there was a reasonable probability that this would have supported a plea of voluntary manslaughter or a defense based upon an inadequate *mens rea*.[1] In its decision, the trial court found that there was no evidence on the record that Gorospe's trial attorney sought to have him evaluated by a mental health professional. However, the court reasoned that Gorospe could not show prejudice from the failure to obtain a mental health evaluation. The trial court also noted the follwoing: a mental health evaluation is not a prerequisite to seeking a voluntary manslaughter instruction; even if a mental health evaluation had been performed, Gorospe still would have had to present evidence showing that a person of ordinary sensibilities would have been provoked to uncontrollable passion; and there was insufficient evidence that Gorospe could have obtained an instruction for voluntary manslaughter or availed himself of a *mens rea* defense. Finally, the court found that because Gorospe's counsel had told the court he discussed the case thoroughly with Gorospe, and because Gorospe

---

[1] Prior to the trial court's decision, Gorospe attempted to amend his petition to recite his version of events the night he killed his wife. The court found the attempted amendment to be procedurally barred, as he filed it without leave of the court. Consequently, the court did not consider the attempted amendment in reaching its decision.

4

had told the court that he believed his counsel fully understood Gorospe's situation, there was no evidence that counsel erred in not advising Gorospe to seek an instruction of voluntary manslaughter. For these reasons, the trial court found that Gorospe was not prejudiced by the alleged ineffective assistance of counsel. The court, therefore, denied Gorospe's petition for post-conviction relief.

Gorospe appealed timely to the state appellate court and the Ohio Supreme Court. The Ohio Supreme Court declined jurisdiction over Gorospe's appeal on April 22, 2009.

On September 10, 2010, respondent moved to dismiss Gorospe's petition on the ground that it was filed untimely. Respondent contends that the statutory period began to run in May 2007, was tolled during the pendency of his state petition for post-conviction relief, and expired in October 2009. Gorospe responds that the statutory period did not begin to run until April 23, 2009 and had not expired when he filed his federal habeas petition on April 21, 2010.

II

*A. Jurisdiction*

The Court of Common Pleas of Summit County, Ohio sentenced Gorospe. Gorospee filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

5

28 U.S.C. § 2241(a ) & (d). This court has jurisdiction over Gorospe's claims.

*B. Statute of Limitations*

Respondent argues that Gorospe's petition is barred by the statute of limitations. The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) ("§ 2244(d)(1)").

The trial court entered judgment and sentence against Gorospe on April 17, 2007. Gorospe had thirty days to file a notice of appeal, and he failed to do so. Ohio App. R. 4(A). Respondent argues that the statutory period for filing a habeas petition began to run on May 18, 2007, pursuant to § 2244(d)(1)(A). Gorospe replies that he was unable to know the factual predicate of his claim of ineffective assistance of counsel until November 12, 2007. Gorospe filed his petition for post-conviction relief, asserting ineffective assistance of counsel, on November 13, 2007. The trial court denied his petition, and Gorospe appealed timely to the state appellate court and the Ohio Supreme Court. The Ohio Supreme Court declined jurisdiction over Gorospe's appeal on April 22, 2009. Gorospe

6

filed his petition for a federal writ of habeas corpus on April 21, 2010. Both parties agree that the statutory period for filing a petition for a federal writ of habeas corpus was tolled during the pendency of Gorospe's petition for post-conviction relief and the appeal of the petition's denial. Consequently, Gorospe contends that the statutory period began to run on April 23, 2009 pursuant to § 2244(d)(1)(D), since that was the latest date on which the limitation period could have begun.

A determination regarding respondent's motion hinges on whether November 12, 2007 was the earliest date on which the factual predicate of Gorospe's claim could have been discovered through the exercise of due diligence. The date upon which the petitioner actually discovered the new evidence is of no relevance in determining whether a petition is timely: The issue is when the petitioner should have learned of the evidence had he exercised reasonable care. *Townsend v. Lafler*, 99 Fed. Appx. 606, 2004 WL 1098757 (6th Cir. May 14, 2004) (citing *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000) and *Lott v. Coyle,* 261 F.3d 594, 605 (6th Cir. 2001)). The burden is on the petitioner to demonstrate that he exercised due diligence in discovering the factual predicate for his claims. *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001). When a petitioner has initiated post-conviction proceedings, a court must include "the time that elapsed between the discovery of the new evidence and the commencement of state post-conviction proceedings as well as the time that elapsed after the conclusion of the state post-conviction proceedings" in calculating the running of the statutory period. *McSwain v. Davis*, 2008 WL 2744640, at *2 (6th Cir. July 15, 2008); *see also DiCenzi v. Rose*, 452 F.3d 465, 468-72 (6th Cir. 2006).

Gorospe demonstrates that he acted with reasonable diligence in investigating his claim from August 11, 2007, the point at which Gorospe hired attorney James Owen

7

("Owen"),[2] until filing his motion for post-conviction relief on November 13, 2007.  He fails to demonstrate, however, that he acted with proper diligence before or after that period.

After the Ohio Supreme Court declined jurisdiction over his state appeal, Gorospe waited 364 days before filing his federal habeas petition.  This left only one day of the statutory period for filing a timely petition.  Gorospe does not explain why he waited so long before filing his federal habeas petition.  Consequently, any lack of reasonable diligence prior to Gorospe's filing a petition for post-conviction relief, however small, is fatal to the timeliness of Gorospe's federal habeas petition.

Plaintiff indicates that Gorospe's mother had concerns about Gorospe's mental health before Gorospe's guilty plea.  According to plaintiff, she communicated these concerns to Gorospe's trial counsel, but counsel failed to respond to them.  Plaintiff does not indicate what happened between the entry of judgment against Gorospe and sentencing on April 17, 2007 until August 11, 2007, when Gorospe's mother engaged Owen to act on her son's behalf, except to say that Gorospe's mother contacted several attorneys during that time.  The passage of nearly four months without doing more than contacting several attorneys regarding concerns about Gorospe's mental health does not demonstrate reasonable diligence.  Without some explanation as to why four months passed without result, particularly as Gorospe's mother had concerns about counsel's performance even before Gorospe's plea, this court cannot recommend a finding that Gorospe has demonstrated reasonable diligence in discovering the factual predicate of his

---

[2] This date is taken from Owen's affidavit in support of Gorospe's petition.  *See* Affidavit of Owen, Petition, Doc. No. 1, Exh., p. 1.

claims.[3] As Gorospe's delay in filing a federal habeas petition after the Ohio Supreme Court's decision nearly consumed the statutory period for filing a timely habeas petition, Gorospe's failure to demonstrate reasonable diligence prior to August 11, 2007 precludes a finding that Gorospe's habeas petition was timely filed.

III

For the reasons given above, respondent's motion to dismiss Gorospe's petition for a writ of habeas corpus should be GRANTED and Gorospe's petition dismissed with prejudice.

Date: January 28, 2011              /s/ *Nancy A. Vecchiarelli*
                                    United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

---

[3] The court also notes that Gorospe has not asked that the court equitably toll the running of the statute.